UNITED STATES BANKRUPTCY COURT
DISTRICT OF KANSAS AT KANSAS CITY

| | |
|---|---|
| In re: | Case No.: 20-20219 |
| PINNACLE REGIONAL HOSPITAL, INC., *et al.*,[1] | Chapter 7 |
| Debtors. | (Jointly Administered) |
| JAMES A OVERCASH, not individually, but solely as Chapter 7 Trustee of JOY'S MAJESTIC PARADISE, INC., | |
| Plaintiff, | |
| v. | Adversary No.: 21-06019 |
| ROJANA ENTERPRISES, INC. | |
| Defendant. | |

## DEFENDANT ROJANA ENTERPRISES, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DIMISS ADVERSARY COMPLAINT

Defendant Rojana Enterprises, Inc. ("**REI**"), by and through its counsel of record, Daniel E. Stuart, Esq. of the Law Office of Daniel E. Stuart, P.A., respectfully moves this Court (the "**Motion**") to dismiss the Adversary Complaint filed by James A. Overcash (the "**Trustee**").[2] In support of this Motion, REI respectfully states as follows:

### INTRODUCTION

1. The Trustee's Complaint necessary fails because the Debtors do not hold an interest in the property he seeks to recover. At all times relevant, and consistent with Kansas law, the principal of the Debtors, Douglas Palzer (defined below), was the owner of the real property, which

---

[1] The jointly administered debtors in these cases are: Pinnacle Regional Hospital, Inc., Case No. 20-20219; Pinnacle Regional Hospital, LLC ("**PRHL**"), Case No. 20-20221; Blue Valley Surgical Associates, LLC, Case No. 20-20222; Pinnacle Health Care System, Inc., Case No. 20-20224; Rojana Realty Investments, Inc., Case No. 20-20225; and Joy's Majestic Paradise, Inc., Case No. 20-20227 (collectively, the "**Debtors**").

[2] Unless otherwise indicated, all chapter and section references are to the Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**"). "**Bankruptcy Rule**" references are to the Federal Rules of Bankruptcy Procedure Rules 1001-9037. "**Civil Rule**" references are to the Federal Rules of Civil Procedure 1-86.

1

constitute the target of the instant adversary proceeding. REI demonstrates herein that Douglas Casper Palzer's ("**Debtor Palzer**") personal funds were used to purchase the properties now at issue, foreclosing any interest the Trustee may have in these properties in accordance with Kansas law.

2. The instant adversary proceeding further constitutes a violation of the automatic stay in Debtor Palzer's Chapter 11 case currently being administered in the District of Nevada. As the transferee of property owned by Debtor Palzer, not the Debtors, claims, if any, against REI, are the property of Debtor Palzer's bankruptcy estate - not these cases. By asserting claims against the same property, the Trustee is in violation of the automatic stay for an attempt to assert control over claims of a bankruptcy estate that he does not administer. Further, the Trustee's course of action leaves REI, currently in negotiations with Debtor Palzer's creditors for satisfaction of any potential claims, inequitably liable for damages arising out of the same property to two different parties. As such, the complaint must be dismissed.

## PROCEDURAL HISTORY

### *The Instant Bankruptcy Cases*

3. On February 12, 2020, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, giving rise to the above-captioned bankruptcy cases (collectively, the "**Bankruptcy Cases**").

4. On March 30, 2020, the Court appointed the Trustee as the Chapter 11 trustee in the Bankruptcy Cases (*PRHL* Docket No. 84).

5. On July 23, 2020, the Court entered its Order on the Trustee's Motion, Converting the Bankruptcy Cases to cases under Chapter 7 of the Bankruptcy Code (*PRHL* Docket No. 385).

6. On August 3, 2020, the Court reappointed the Trustee to administer the Bankruptcy Cases following their conversion to Chapter 7.[3]

///

---

[3] The Court subsequently entered an Order finding the Trustee would not administer the PRHL as Chapter 7 trustee (*PRHL* Docket No. 539).

///

*The Palzer Bankruptcy*

7. On April 8, 2020, Douglas Casper Palzer ("**Debtor Palzer**") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for District of Nevada, giving rise to the Debtor Palzer's Chapter 11 case *In re Douglas Caspar Palzer*, 20-11889-MKN, (Bankr. D. Nev. April 8, 2020) (the "**Palzer Bankruptcy**") (*Palzer* Docket No. 1).

8. Also on April 8, 2020, the Court set the meeting of creditors (the "**341 Meeting**") for May 14, 2020—later continued to June 18, 2020—and the final date to file claims against Debtor Palzer for August 12, 2020 (*Palzer* Docket No. 2). Counsel for the Trustee appeared at the 341 Meeting.

9. On March 12, 2021, the Debtor filed a disclosure statement (the "**Disclosure Statement**") and plan of reorganization (the "**Plan**") (*Palzer* Docket Nos. 155; 156). The Disclosure Statement and Plan were served on the Trustee.

## ALLEGED FACTUAL BACKGROUND

10. Prior to the appointment of the Trustee in the Bankruptcy Cases, Debtor Palzer was the principal of the Debtors and personal guarantor of a number of the Debtors' financial obligations. Subsequent to the conversion of the Bankruptcy Cases from Chapter 11 to Chapter 7, Debtor Palzer sought bankruptcy relief in the District of Nevada where he resides.

11. REI is a real estate holding entity controlled by Debtor Palzer's wife, Rojanna Palzer.

*Events Predating the Bankruptcy Cases and the Palzer Bankruptcy*

12. Thomas Francis Palzer ("**Thomas**"), Debtor Palzer's biological brother, played various roles in the operation of the Debtors, including the chief operating officer ("**COO**") of JMP.

13. As COO of JMP, Thomas held apparent and actual authority to purchase and title property on behalf of JMP.

14. At the time of the purchase of the Transferred Properties, Debtor Palzer and Thomas agreed and understood that Thomas would be purchasing real property—as well as conducting other business—on Debtor Palzer's behalf for the benefit of his family.

15. On May 22, 2017, Debtor Palzer executed a contract to purchase the real property referred to by the Trustee in Exhibit A of his Complaint ("**RPA**") (Docket No. 1).

16. On October 24, 2017, Thomas executed a contract to purchase the real property referred to by the Trustee in Exhibit B of his Complaint ("**RPB**") (Id.).

17. On February 6, 2016, Thomas executed a contract to purchase the real property referred to by the Trustee in Exhibit C of his Complaint ("**RPC**"- collectively with RPA and RPB, the "**Transferred Properties**") (Id.).[4]

18. Debtor Palzer executed the purchase of RPA in the name of JMP and himself.

19. Thomas executed the purchases of RPB and RPC on behalf of Debtor Palzer, using Debtor Palzer's personal funds. *See* the Declaration of Douglas Casper Palzer in support of the Motion attached hereto as **Exhibit 1** and the Declaration of Thomas Francis Palzer in support of the Motion attached hereto as **Exhibit 2**.

20. Thomas, without Debtor Palzer's permission, mistakenly titled RPB and RPC in the names of JMP, the entity he controls.

21. On April 9, 2018, JMP executed a transfer of the Transferred Properties to REI at the direction of Debtor Palzer, to remedy Thomas' error. As the Transferred Properties' equitable and actual owner, Debtor Palzer's intention when purchasing the Transferred Properties was to maintain them for the benefit of his family.

22. At the time JMP transferred the Transferred Properties, the Debtors and Debtor Palzer were solvent.[5]

---

[4] Exhibits C and D of the Complaint are identical, and the Trustee fails to give any description of the properties in the Complaint. REI presumes these exhibits reference a single property and reserves all rights to address this issue should that not be the case.

[5] REI reserves the right fully brief this issue should the need arrive. At this stage in the instant adversary case, however, REI submits that JMP's failure to hold an ownership interest in the Transferred Properties is dispositive of the Trustee's Complaint.

4

## STANDARD FOR REVIEW

23. Rule 12(b)(6), made applicable to adversary proceedings by Fed.R.Bankr.P. 7012(b), provides for the defense of "failure to state a claim upon which relief can be granted." The decision of the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1995 (2007), provides the following definitive standard for allegations which must be provided in a complaint pursuant to Fed.R.Civ.P. 8(a) and the standards by which a complaint is measured under that rule in the face of a Rule 12(b)(6) motion:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

127 S.Ct. 1995, 1964-65 (internal citations and quotations omitted).

24. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. *Id.* Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement. *Id.*

25. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 1949.

26. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id*. The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Id*. Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice. *Id*. Only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id*. at 1950.

## LEGAL ARGUMENT

### *The Transferred Properties Were Not Property of JMP Estate as JMP Held Only Bare Legal Title*

27. To successfully prosecute a claim under Section 548(a)(1)(B), a trustee must demonstrate "all of the requirements necessary to establish a constructively fraudulent transfer[,]" which include the: "(1) Debtor had an interest in the Property; (2) Debtor transferred that interest within two years of filing bankruptcy; (3) Debtor received less than a reasonably equivalent value in exchange for the transfer; and (4) Debtor was insolvent at the time he made the transfer or became insolvent as a result of the transfer, or transferred his interest in the [p]roperty to an insider." *Davis v. Pham (In re Nguyen)*, No. KS-13-002, 2014 Bankr. LEXIS 2084, at *11 (B.A.P. 10th Cir. May 9, 2014). "The most fundamental element of § 548, [is] whether there was ***a transfer of an interest of [a d]ebtor in the [p]roperty*** that [a t]rustee [seeks to] avoid." *Id*. (emphasis in original).

28. For purposes of Section 548(a)(1)(B), whether a debtor holds an *interest* in property—in the instant case—is determined under Kansas law. *Id*. Under common law, "a resulting trust [in favor of the payer] is presumed when consideration is paid by one person and legal title is taken in the name of another[; however,] Kansas statutes have abolished this presumption." *Univ. State Bank v. Blevins*, 227 Kan. 40, 42, 605 P.2d 91, 93 (1980). In place of the common law presumption, Kansas law provides that "when a conveyance of real property for a valuable consideration is made to one person and the consideration therefor paid by another, no trust shall arise and title shall vest in transferee, except as provided by certain statutory exceptions." *Davis*, 2014 Bankr. LEXIS 2084 at *14 (citing KSA § 58-2406) (internal quotations and brackets omitted).

29. Kansas law provides a number of statutory exceptions to KSA § 58-2406. One applicable exception provides that KSA § 58-2406 shall not apply "where it shall be made to

6

appear that by agreement and without any fraudulent intent the party to whom the conveyance was made, or in whom the title shall vest, was to hold the land or some interest therein in trust for the party paying the purchase money or some part thereof." KSA § 58-2408. In other words, KSA § 58-2406 shall not apply if the parties to the applicable purchase intended by agreement for the property to be held for the benefit of a third party. For purposes this exception, "the agreement to create a resulting trust need not be in writing; it may be proved by parol, or by circumstantial evidence." *Univ. State Bank v. Blevins*, 227 Kan. 40, 42-43, 605 P.2d 91, 94 (1980) (citing *Lyons v. Berlau*, 67 Kan. 426, 73 Pac. 52 (1903)). Indeed, the Kansas Supreme Court has held that "[p]roof of [such] agreement [need] not [be] strong" so as to allow a court to "h[o]ld it sufficient." *Id*. at 43; *see Taylor v. Walker*, 114 Kan. 614, 220 P. 518, 1923 Kan. LEXIS 249 (Kan. 1923) (an agreement to hold title to real property in trust for the person paying the consideration is not required to be in writing; the existence of the trust relationship can be inferred from the relations of the parties, their financial means, their conduct and admissions, and other pertinent circumstantial evidence).

30. Here, Debtor Palzer entered into an agreement with Thomas to allow him to purchase property on his behalf for the benefit of his family. Exhibits A and B. The Transferred Properties were paid for by Debtor Palzer using funds from his personal account despite the fact that Thomas had access to—and authority to use—JMP's bank accounts. *See* Exhibits A and B. This agreement is evidenced by the declarations of Debtor Palzer and Thomas as well as a myriad of business transactions available to the Trustee. This agreement is further evidenced by the circumstances surrounding the purchases and transfers. These circumstances include the fact Thomas and Debtor Palzer share a life long familial relationship and Debtor Palzer was extremely busy running the day-to-day operations of the Debtors. As such, many—if not all—of Debtor Palzer's non-Debtors ventures were operated on his behalf by his close family members, including Thomas. The Trustee is incapable of demonstrating any rational for Debtor Palzer using his personal funds to purchase the Transferred Properties with the intention of simply gifting them to JMP. Rather, the circumstances demonstrate Thomas executed the purchases on behalf of Debtor

7

Palzer and simply erroneously titled them in JMP until such time as the error was corrected in 2018.

31. Kansas law provides yet another exception to KSA § 58-2406, in KSA § 58-2408, which states § 58-2406 shall not apply in "cases where the alienee shall have taken an absolute conveyance in his or her own name without the consent of the person with whose money the consideration was paid." KSA § 58-2408.

32. Here, Thomas had no consent from Debtor Palzer to title the Transferred Properties in the name of JMP, for whom he was a COO. Debtor Palzer routinely enlisted Thomas to enter into certain business transactions on his behalf. Thomas, however, had no instruction nor consent to hold the Transferred Properties in the name of the entity he controlled. Exhibit B. Thomas, mistakenly titled the Transferred Properties in JMP, not understanding the legal implications of his action, for the sake of efficiency and convenience given that he controlled JMP. Exhibit B. Thomas simply believed it would be easier to close the sales transactions on behalf of JMP as its COO. Exhibit B. This is evidenced by the fact that the Transferred Properties were transferred to REI soon after Debtor Palzer was made aware of the manner in which the Transferred Properties were held.

### *The Claims Asserted by the Trustee Against REI are Property of the Palzer Bankruptcy Estate Rendering the Complaint a Violation of the Automatic Stay*

33. "Unlike [S]ection 362(a)(1), which prohibits acts against the debtor, [S]ection 362(a)(3) addresses acts 'to exercise control over property of the estate,' including causes of action." *In re Spiech Farms, LLC*, 603 B.R. 395, 401 (Bankr. W.D. Mich. 2019) (citing *Amedisys, Inc. v. Nat'l Century Fin. Enters., Inc. (In re Nat'l Century Fin. Enters., Inc.)*, 423 F.3d 567, 577-78 (6th Cir. 2005)). While the "trustee of a bankruptcy estate has the exclusive right to assert a debtor's prepetition causes of action," if causes of action "belongs solely to the estate's creditors, then the trustee has no standing to bring the[m]" *Id.* at 401. A trustee further "has the exclusive right to assert causes of action that arise under the Bankruptcy Code, including chapter 5 avoidance

actions. *Id*. at 401. "Any proceeds or other interests in property that the trustee recovers constitute property of the estate." *Id*. at 402 (citing 11 U.S.C. § 541(a)(3), (6)).

34. Although the determination of the party with the "sole right to bring a cause of action is [controlled] by applicable non-bankruptcy law . . . if either[] party's recovery can preclude the other from a subsequent recovery, then the claims are not truly independent and by default [such claims] belong to the estate." *Id*. at 401 (citing *Lowe v. Bowers (In re Nicole Gas Prod., Ltd.)*, 916 F.3d 566, 573 (6th Cir. 2019), *petition for cert. filed*, No. 18-1489 (U.S. May 29, 2019)).

35. As set forth above, the Transferred Properties were property of Debtor Palzer until such time as JMP transferred them to REI. As such, to the extent Debtor Palzer held any speculative claw back claims against REI, such claims ***are now property of the Palzer Bankruptcy estate*** as of the date Debtor Palzer filed for Chapter 11 relief in the District of Nevada. § 541(a)(3). Further supporting this conclusion is the fact that should the Trustee recover the Transferred Properties, creditors of the Debtor Palzer would be precluded from recovering the Transferred Properties for satisfaction of their claims. As a result, the claims asserted by the Trustee are subject to Debtor Palzer's automatic stay, and the filing of the instant adversary case constitutes a violation of the automatic stay.

### *The Complaint is Inappropriate Because it Gives Rise to Double Damages Against REI*

36. The Chapter 5 claims involving the Transferred Properties constitute property of the Palzer Bankruptcy estate – not the estates of these Debtors. Debtor Palzer proposed a plan of reorganization in the Palzer Bankruptcy that settles any claims the Palzer Bankruptcy Estate holds against REI, in exchange for a cash contribution for the benefit of the creditors in that case (which includes several creditors of these cases). *See* Palzer's *First Amended Disclosure Statement for the Plan of Reorganization for Douglas Casper Palzer Under Chapter 11 of the United States Bankruptcy Code* attached hereto as **Exhibit 3** (the "**Disclosure Statement**") (Debtor's First Amended Chapter 11 Plan of Reorganization for Douglas Casper Under Chapter 11 of the Bankruptcy Code Dated June 2, 2021, is attached to the Disclosure Statement as Exhibit A). If the

Trustee is permitted to pursue the instant adversary case, REI would remain liable for the value of the Transferred Properties to the Palzer Bankruptcy.

### *Dismissal of the Trustee's Claw back Claims Renders the Relief Sought Under Section 502 Inappropriate*

37. As demonstrated above, the Trustee lacks any basis for relief under Section 548. As such, the Trustee's contention "that any claim the REI holds against the Debtors' bankruptcy estate should be disallowed in its entirety unless and until REI returns the Transfers or the value of the Transfers to the Trustee" similarly lacks any basis and must be dismissed.

### CONCLUSION

WHEREFORE, REI respectfully requests that the Court: (i) dismiss the Complaint; and (ii) granting such other and further relief as is just and proper.

DATED: June 21, 2021.

Respectfully Submitted by:

THE LAW OFFICE OF DANIEL E. STUART, P.A.

By: /s/ *Daniel E. Stuart*
Daniel E. Stuart, Esq. (KS#16490)
4707 College Blvd, Ste 208
Leawood, KS 66211
Telephone: 913.225.8112
Facsimile: 913.338.4501
Email: dan@stuartlaw.net

Attorneys for Defendant
Rojana Enterprises, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 21, 2021 the above and foregoing was electronically filed with the court using the CM/ECF system, which sent notification to all parties of interest participating in the CM/ECF System. I further certify that on June 21, 2021, copies of the above and foregoing was served upon the following parties by electronic mail:

James A. Overcash (jovercash@woodsaitken.com)
Nicholas Zluticky (nicholas.zluticky@stinsonleonard.com).

DATED: June 21, 2021.

                                             /s/ *Daniel E. Stuart*
                                             Attorney for Defendant
                                             Rojana Enterprises, Inc